## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALLSTATE PROPERTY & CASUALTY | ) | 3:20-CV-00607 (KAD) |
| INSURANCE COMPANY | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Ryan VERLIN, Nicole VERLIN, | ) | APRIL 18, 2022 |
| Chistopher HAMER, Cynthia HAMER, | ) | |
| Marian BYRNE, Rachel PRECIOUS, & | ) | |
| Jack PRECIOUS | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OF DECISION
## RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, ECF No. 44

Kari A. Dooley, United States District Judge:

This declaratory judgment action arises out of a Hatfield/McCoy type dispute between neighbors which boiled over into litigation in the Superior Court for the State of Connecticut, captioned "Christopher J. Hamer and Cynthia Hamer v. Marian Byrne, Rachel Precious, Jack Precious, Janis Melone, Ryan Verlin and Nicole Vines Verlin" and bearing Docket Number FST-CV20-6047674-S (the "Underlying Litigation"). Plaintiff, Allstate Property and Casualty Insurance Company ("Allstate"), issued a homeowners policy to Ryan Verlin and Nicole Verlin (the "Verlin Defendants") and issued a separate homeowners policy to Marian Byrne and brings this action seeking a declaratory judgment that under the terms of these policies, Allstate is under no obligation to either defend or indemnify the Verlin Defendants or Marian Byrne (or her children Jack Precious and Rachel Precious) (collectively "the Byrne Defendants") with respect to the Underlying Litigation. Pending before the Court is Allstate's motion for summary judgment in which Allstate asserts that the unambiguous terms of the policy it issued to the Verlin Defendants, and the unambiguous terms of a separate policy issued to Marian Byrne, which would otherwise

insure her children Jack and Rachel Precious, do not provide coverage for the claims asserted by the Plaintiffs in the Underlying Litigation, Christopher and Cynthia Hamer (the "Hamers").[1] The Verlin and Byrne Defendants oppose summary judgment though neither disagrees as to the terms and scope of the policies at issue. For the reasons that follow, Allstate's motion for summary judgment is GRANTED.

**Legal Standard**

The standard under which courts review motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888 (1990).

---

[1] Allstate also named the Hamers as defendants in this action. While the Hamers have appeared, they have not answered the Second Amended Complaint. Following entry of a default, Allstate moved for a default judgment as to the Hamers. However, the Second Amended Complaint does not seek any relief, declaratory or otherwise, with respect to the Hamers, and the Hamers have indicated that they have no interest in the policies at issue. Further, the Court observed that if summary judgment is granted as to the remaining defendants, such a decision would extinguish any further claims under these policies arising out of the other Defendants' conduct as alleged in the Underlying Litigation. Accordingly, the motion for default judgment was denied, with the understanding that the issues taken up and decided herein would resolve all outstanding issues as between the parties.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Background & The Underlying Litigation**

Christopher Hamer first sued the Byrne and Verlin Defendants on November 22, 2019 in Connecticut state court.[2] On July 8, 2020, Christopher Hamer unilaterally withdrew this complaint, and filed a second suit, this time naming Christopher and Cynthia Hamer as Plaintiffs against the Verlin and Byrne Defendants. The suit arose from a property dispute among neighbors, and, broadly speaking, the Hamers sought to enforce their rights to an easement, to seek damages flowing from an interference with the same, and to quiet title to a parcel of land that they believe is theirs by adverse possession. Plaintiff has been defending this suit for the Verlin and Byrne Defendants pursuant to a full and complete reservation of rights.

The Court summarizes the allegations in the Underlying Litigation.[3] The Hamers reside at 24 Evergreen Avenue, Westport, Connecticut (the "Hamer Parcel"), and Cynthia Hamer bought

---

[2] The November 22, 2019 state court complaint, a response to request for revision, and a partially revised complaint from this first lawsuit were attached to the original Complaint in this matter, ECF No. 1. The allegations contained in the first lawsuit are more expansive than those in the later filed state court complaint. The Court does not consider the original complaint in rendering this decision because the motion seeks a declaratory judgment regarding Allstate's duty to defend or indemnify the Byrne and Verlin Defendants with respect to the second state court lawsuit, Docket Number FST-CV20-6047674-S.

[3] The July 8, 2020 Complaint in the Underlying Litigation was attached to Plaintiff's motion for summary judgment as Exhibit 3. The July 8, 2020 Complaint also names Janis Melone as a defendant, but Melone is not a party to this action and the allegations against her shall not be further developed unless necessary to the analysis.

the property in 2017. (She would later convey the property to Christopher J. Hamer by quitclaim deed on February 20, 2020.) Cynthia's deed was recorded on June 23, 2017, and it references an easement, hereinafter referred to as "the Easement" and measuring 27.70 feet by 180 feet, that adjoins Evergreen Avenue. The Easement allowed the Hamers ingress and egress from their property, and it could be used for "all purposes for which a public highway can be used." Adjoining the Hamer Parcel is a property known as 22 Evergreen Avenue, Westport, Connecticut, and which will be referred to as the "Byrne Parcel." Marian Byrne and her then husband Robert Precious purchased this property in 1995, and their deed, as recorded in the Town of Westport land records, mentions a strip of land measuring 27.70 feet by 180 feet adjoining Evergreen Avenue, or the Easement. On or about April 15, 2015, Robert Precious executed a quitclaim deed to "Marian Precious." And adjoining the Byrne Parcel is a property known as 20 Evergreen Avenue, where the Verlin Defendants resided at the times relevant to the Second Amended Complaint.[4]

In the Underlying Litigation, the Hamers brought six counts against the Byrne Defendants and the Verlin Defendants: a claim to quiet title of an adverse possession parcel against Marian Byrne (Count One); a claim for interference with the Easement against the Verlin Defendants and the Byrne Defendants (Count Two); a claim for spite structure common law nuisance against Marian Byrne (Count Three); a claim for malicious construction of a spite structure pursuant to Conn. Gen. Stat. §§ 52-480 & 52-570 against Marian Byrne (Count Four); a claim for damage of property against the Byrne Defendants (Count Five); and a claim for declaratory and equitable relief pursuant to Conn. Gen. Stat. § 22a-16 against the Byrne Defendants (Count Six).

---

[4] The Verlin Defendants' residence was revealed in the earlier state court lawsuit.

In Count Two, brought against the Byrne and Verlin Defendants, the Hamers allege that as owners of the dominant tenement, the Hamer Parcel, they are the beneficiaries of the Easement and that they are therefore entitled to the use of the Easement free of the malicious interference of all of the Defendants. Nevertheless, the Hamers allege that Marian Byrne maintains her mailbox in the middle of the Easement as an overt attempt to block the Hamers' reasonable use of the Easement. Near the mailbox, moreover, Marian Byrne also installed a cement post, which exists only to block the Hamers' use of the Easement. Marian Byrne also maintains multiple trees and shrubbery which encroach on the Easement and interfere with the Hamers' reasonable use of the same. The Verlin and Byrne Defendants together also erected a fence, otherwise known as the "Fence," that encroaches on the Easement and prevents the Hamers from using that right of way as a public highway. Finally, starting in the summer of 2017 and continuing until at least the date of the lawsuit, both the Byrne Defendants and the Verlin Defendants have obstructed the Easement by parking their vehicles in a manner calculated to interfere with the Hamers' ordinary use of the driveway. They have, in other words, allegedly turned the Easement into a parking lot.

Marian Byrne alone is named as a defendant in Counts One, Three, and Four. In Count One, the Hamers seek to quiet title to a parcel of land (the "Adverse Possession Parcel") that sits behind the Hamer Parcel and is, per the land records, part of the Byrne Parcel. Count One both identifies the Adverse Possession Parcel and lays out the actions taken by the Hamers and their predecessors in interest to demonstrate an ownership interest in the parcel, including landscaping, planting vegetation, gardening, cutting grass, removing storm-damaged trees, and nurturing saplings. The Hamers allege that their and their predecessors' activities were open and hostile, and they further allege that, during a March 2018 meeting, Marian Byrne made a statement indicating

that the Adverse Possession Parcel was not hers and that she considered the Adverse Possession Parcel part of the Hamer Parcel.

Counts Three and Four, meanwhile, concern the construction of the "Spite Structure." Count Three is a spite structure common law claim while Count Four is a claim pursuant to Conn. Gen. Stat. §§ 52-480 & 52-570 for malicious erection of a spite structure.[5] Count Four incorporates the allegations in Count Three. Therein, the Hamers allege that, during the last quarter of 2018, Marian Byrne cornered Cynthia Hamer, gestured toward an eight-foot stockade fence and said, "I am going to put an eight-foot fence across your backyard and ruin your view." This interaction followed an indication by the Hamers that they would go to court to settle the Adverse Possession Parcel matter. Then, on or about May 14 and 15, 2019, Marian Byrne entered onto the Hamers' land without permission, cut down and removed trees standing on the Adverse Possession Parcel, and proceed to erect the "Spite Structure," an eight-foot-high structure consisting of stockade fence pieces that runs the ninety-five-foot length of the rear of the Hamers' property. The Spite Structure totally blocks the view and all light that was available prior to its erection, and the Spite Structure provides no value in stopping animals or people from entering Marian Byrne's property. Marian Byrne expressed her "evil or vengeful" motivation for the Spite Structure by threatening to build a "monument to terror" if the Hamers failed to comply with her demands. The Hamers have provided notice that the Spite Structure was a nuisance and have asked for Marian Byrne to abate that nuisance since at least May 14, 2019. Marian Byrne has refused to remove the structure and instead threatens additional construction.

---

[5] Connecticut General Statutes § 52-570 provides: "An action may be maintained by the proprietor of any land against the owner or lessee of land adjacent, who maliciously erects any structure thereon, with intent to annoy or injure the plaintiff in his use or disposition of his land." Connecticut General Statutes § 52-480 authorizes injunctive relief "against the malicious erection . . . of any structure . . . intended to annoy and injure any owner or lessee of adjacent land."

Counts Five and Six allege that all of the Byrne Defendants are responsible for damage to the Hamers' Parcel and the Adverse Possession Parcel. Count Five is for damage to property and seeks both monetary and equitable relief while Count Six, which incorporates by reference the rest of the allegations in the complaint, is a claim pursuant to Conn. Gen. Stat. § 22a-16 and seeks declaratory and injunctive relief.[6] Count Five alleges that prior to Marian Byrne's acquisition of her parcel, the property was part of perfume mogul Alter Langer von Lagendoff's thirty-three acre estate and that von Lagendoff planted several species of rare trees on the property, planted shrubbery to strengthen the watercourse in the area, and made extensive landscaping improvements to the property. The Byrne Defendants, however, are alleged to have deliberately and wantonly removed fragile plants from the area, participated in the construction of the Spite Structure and the destruction of trees and other vegetation, and have caused surface and storm waters to flow onto the Hamer Parcel, resulting in erosion damage and contamination. The water diverted onto the Hamer Parcel has caused real and property damage, and the Hamers have suffered monetary damages as a result.

**Discussion**

As described above, Allstate seeks a declaratory judgment that it has neither the duty to defend nor indemnify the Verlin Defendants or the Byrne Defendants in the Underlying Litigation. An insurer's duty to defend is broader than its duty to indemnify. *Cmty. Action for Greater Middlesex Cty., Inc. v. Am. All. Ins. Co.*, 254 Conn. 387, 398 (2000). "If an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the

---

[6] Connecticut General Statutes § 22a-16 allows any person to sue for declaratory and injunctive relief "for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction."

7

insured." *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 463 (2005) (emphasis in original; internal quotation marks and citation omitted). "[Connecticut courts construe] broad policy language in favor of imposing a duty to defend on the insurer." *Id*. at 466. "Where the insurer has sufficient knowledge to show that a claim falls within coverage even though not properly pleaded to [invoke] coverage, the carrier cannot make the face of the complaint argument[.]" *Id*. at 467 (internal quotation marks omitted). Instead, an insurer is required "to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." *Id*. (internal quotation marks omitted).

"[T]he question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of the complaint with the terms of the insurance policy." *Misiti, LLC v. Travelers Prop. Cas. Co. of Am.*, 308 Conn. 146, 154 (2013) (internal quotation marks, citation, and alterations omitted). "[W]here an insurer is guilty of a breach of its contract to defend, it is liable to pay to the insured not only his reasonable expenses in conducting his own defense but, in the absence of fraud or collusion, the amount of a judgment [or settlement] obtained against the insured up to the limit of liability fixed by its policy." *Hartford Cas. Ins. Co.*, 274 Conn. at 470 (internal quotation marks and citation omitted). However, if an insurer has no duty to defend, it has no duty to indemnify. *DaCruz v. State Farm Fire and Cas. Co.*, 268 Conn. 675, 688 (2004).

"Under Connecticut law, the interpretation of an insurance policy is a question of law for the court." *Arrowood Surplus Lines Ins. Co. v. Westport Ins. Corp.*, No. 3:08-cv-01393 (AWT), 2010 WL 56108, at *2 (D. Conn. Jan. 5, 2010), *aff'd sub nom. Arrowood Surplus Lines Ins. Co. v. Westport Ins. Co.*, 395 F. App'x 778 (2d Cir. 2010) (citing *Pac. Indem. Ins. Co. v. Aetna Cas. & Sur. Co.*, 240 Conn. 26, 30 (1997)). "An insurance policy is to be interpreted by the same general

rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy [and] [t]he policy words must be accorded their natural and ordinary meaning[.]" *Aetna Cas. & Sur. Co.*, 240 Conn. at 29–30 (internal quotation marks omitted). Significantly, the Court "must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result[.]" *Arrowood Indem. Co. v. King*, 304 Conn. 179, 187 (2012). Further, "any ambiguity in the terms of an insurance policy must be construed in favor of the insured [but such rule] may not be applied . . . unless the policy terms are indeed ambiguous [and] the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous[.] " *Aetna Cas. & Sur. Co.*, 240 Conn. at 30. The Court will not "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity[.]" *Hammer v. Lumberman's Mut. Cas. Co.*, 214 Conn. 573, 584 (1990).

### The Verlin Policy

Allstate issued an insurance policy, Renters Policy No. 925 573 478 or the "Verlin Policy," to the Verlin Defendants, and this policy was in effect during the events at issue. Allstate attached a copy of the Verlin Policy to its motion for summary judgment. The Verlin Policy includes the following definitions:

> 1. "**You**" or "**your**" – means the person named on the Policy Declarations as the insured and that person's resident spouse.
>
> 2. "**Allstate**," "**we**," "**us**," or "**our**" – means the company named on the Policy Declarations.
>
> . . .
>
> 4. "**Bodily injury**" – means physical harm to the body, including

sickness or disease, and resulting death, except that **bodily injury** does not include:

> a) any venereal disease;
>
> b) Herpes;
>
> c) Acquired Immune Deficiency Syndrome (AIDS);
>
> d) AIDS Related Complex (ARC);
>
> e) Human Immunodeficiency Virus (HIV);

or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

. . .

7. "**Occurrence**" – means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

8. "**Property damage**" – means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

In terms of coverage, **Section II – Family Liability and Guest Medical Protection**, of the Verlin

Policy provides:

> *Coverage X*
> *Family Liability Protection*
>
> *Losses We Cover Under Coverage X*:
> Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.
>
> **We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not

obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

The policy also includes certain exclusions from coverage.

> ***Losses We Do Not Cover Under Coverage X*:**
> 1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an **insured person**. This exclusion applies even if:
>
>> a) such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or
>>
>> b) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.
>
> . . .

Policy Endorsement AP730-1 amends this intentional or criminal acts exclusion as follows:

> 1. **We** do not cover **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts of the **insured person**. This exclusion applies even if:
>
>> a) such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or
>>
>> b) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not the **insured person** is actually charged with, or convicted of, a crime. This exclusion does not apply with respect to the interest of an **insured person** not participating in these acts.

***The Byrne Policy***

At the times relevant to the amended complaint, the Allstate provided insurance coverage to Marian Byrne under a Deluxe Homeowners Policy, No. 019 831 296, or the "Byrne Policy." A copy of this policy was attached to Allstate's motion for summary judgment. If Allstate is required to provide coverage to Jack or Rachel Precious, such coverage is pursuant to the Byrne Policy. The Byrne Policy includes the following definitions:

1. **You**" or "**your**" – means the person named on the Policy Declarations as the insured and that person's resident spouse.

2. "**Allstate**," "**we**," "**us**," or "**our**" – means the company named on the Policy Declarations.

3. "**Insured person(s)**" – means **you** and, if a resident of **your** household:

a) any relative; and

b) any dependent person in **your** care.

. . .

4. "**Bodily injury**" – means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:

a) any venereal disease;

b) Herpes;

c) Acquired Immune Deficiency Syndrome (AIDS);

d) AIDS Related Complex (ARC);

e) Human Immunodeficiency Virus (HIV);

or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

. . .

9. "**Occurrence**" – means an accident, including continuous or

repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

10. "**Property damage**" – means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

In terms of coverage, *Section II – Family Liability and Guest Medical Protection* of the

Byrne Policy provides:

> *Coverage X*
> *Family Liability Protection*
>
> *Losses We Cover Under Coverage X*:
> Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.
>
> **We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

The policy also includes certain exclusions from this coverage:

> *Losses We Do Not Cover Under Coverage X*:
> 1. **We** do not cover **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts of the **insured person**. This exclusion applies even if:
>
>> a) such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or
>>
>> b) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not the **insured person** is actually charged with, or convicted of, a crime.

13

. . .

9. **We** do not cover any **property damage** consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

10. **We** do not cover any **bodily injury** or **property damage** arising out of any liability statutorily imposed upon any **insured person** in any manner, consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

. . .

Policy Endorsement AP730-1 amends this intentional or criminal acts exclusion as follows:

1. **We** do not cover **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts of the **insured person**. This exclusion applies even if:

   a) such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or

   b) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not the **insured person** is actually charged with, or convicted of, a crime. This exclusion does not apply with respect to the interest of an **insured person** not participating in these acts.

Although Allstate's arguments overlap considerably insofar as the policy language is all but identical, the allegations in the Underlying Litigation against the Verlin and Byrne Defendants do not. The Court therefore examines the allegations in the Underlying Litigation specific to the Verlin Defendants and specific to the Byrne Defendants under the terms of the policy applicable to each.

***The Verlin Defendants***

14

As to the Verlin Defendants, Allstate first argues that there is unequivocally no coverage—for either defense or indemnity—for the claims in the Underlying Litigation because the Underlying Action does not allege a "bodily injury"[7] or "property damage" as required by the Verlin Policy. Allstate further asserts that the Verlin Policy only provides coverage "for property damage" that is caused by an "occurrence," and because the allegations in the Underlying Litigation do not constitute an "occurrence" within the meaning of the Verlin Policy, the policy does not give Allstate a duty to defend. Finally, Allstate also asserts that the allegations in the Underlying Litigation bring this case within the Intentional or Criminal Acts Exclusion in the Verlin Policy, relieving Allstate of any duty to defend or indemnify the Verlin Defendants.

The Verlin Defendants do not challenge Allstate's reading of the policy. Rather they challenge whether the Hamers' allegations might arguably fall within the scope of the policy's coverage thereby triggering a duty to defend. The Verlin Defendants also assert that there is a genuine issue of material fact as to whether the Verlin Defendants intentionally interfered with the Easement and whether they intentionally caused any damage to the same.[8]

Reviewing the allegations in the complaint in the Underlying Litigation against the terms of the policy reveals that the Hamers do not allege to have suffered any "property damage" as that term is defined in the policy. On this issue, the Verlin Defendants, who are alleged to have parked

---

[7] Neither the Verlin nor the Byrne Defendants argue otherwise. The Court agrees with Allstate and does not further address whether the Underlying Litigation involves claims of "bodily injury."

[8] Despite this assertion, the Verlin Defendants did not submit a D. Conn. L. Civ. R. 56(a)2 Statement, which effectively serves as an admission of the facts contained in Allstate's D. Conn. L. Civ. R. 56(a)1 Statement. *See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement . . ."); *see also Chiaravallo v. Middletown Transit District*, --- F. Supp. 3d. ---, 2021 WL 4310662, at *1 (D. Conn. Sept. 22, 2021) (explaining the interaction between Local Rule 56(a)1 and 56(a)2 statements). The Verlin Defendants, moreover, state that they agree with Allstate that the questions before the Court are matters of law in the opening portions of their brief. Nevertheless, the Court will address the substance of the Verlin Defendants' "factual" arguments below.

on the Easement, argue that "parking on the easement *may* have caused physical damage to the ground contained within the easement boundaries." (Verlin Defendants' Opp. Mem. 8, ECF No. 70 (emphasis added).) However, whether or not such damage may have occurred is beside the point. Controlling is the fact that the Hamers allege no such property damage nor seek redress for any such property damage. *See Misiti, LLC*, 308 Conn. at 154.[9]

While this is dispositive, the Court further observes that neither does the Verlin Defendants' claim arise out of an "occurrence" under the policy because the harm in the Underlying Litigation is not alleged to have been the result of an accident or negligence. And as described above, an "occurrence" is defined as "an accident … resulting in bodily injury or property damage." Notwithstanding, the Verlin Defendants argue that any damage done to the Easement (though none is alleged) was accidental, and therefore the result of an occurrence, because the Verlin Defendants did not intend to damage the Easement.[10] The Court is not persuaded. Again, the Verlin Defendants ignore the nature of the allegations against them in favor of a hypothetical alternative construct of the Underlying Litigation.[11] *See Vermont Mut. Ins. Co. v. Walukiewicz*, 290 Conn. 582, 594 (2009) (analyzing a similar policy provision and indicating that "the relevant inquiry in determining whether an accident has occurred is whether the injuries at issue were caused by the intentional design of the insured, or rather, by a sudden, unforeseen

---

[9] Indeed, the complaint in the Underlying Litigation is devoid of any allegation that the Verlin Defendants did anything to the Easement but interfere with the Hamers' use of it.

[10] Notably, the Verlin Defendants assert this argument by analyzing their behavior under a trespass theory, which is an intentional tort, *e.g.*, *Caciopoli v. Lebowitz*, 131 Conn. App. 306, 316 (2011), and even though the Underlying Litigation alleges that the Verlin Defendants have interfered with an easement. For the purposes of deciding this motion, the Court accepts that these causes of action are analogous.

[11] It bears repeating that although the Verlin Defendants allege in their opposition memorandum that they *may* have damaged the Easement, they did not submit a D. Conn. L. Civ. R. 56(a)2 Statement indicating the same, and they have otherwise not offered proof that any such damage actually occurred or that the Hamers accused them of causing such damage.

16

event"); *Allstate Ins. Co. v. Tarantino*, No. 3:15-cv-62 (SRU), 2016 WL 3546197, at *4 (D. Conn. June 23, 2016) ("Under Connecticut law, the relevant inquiry in determining whether an occurrence constitutes an accident is whether the event causing the injury was an accident, not whether the injury itself is accidental.") (internal quotations omitted). Although an individual might park where they are not supposed to by accident, the allegations here are that the Verlin Defendants parked "in a manner calculated to interfere" with the Hamers' use of the Easement. Further, it matters not that the Verlin Defendants may not have intended to *damage the Easement* because the complaint in the Underlying Litigation alleges that the Verlin Defendants intended to *harm the Hamers*, specifically by interfering with the Hamers' use and enjoyment of the Easement. *See Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 450, 456–59 (D. Conn. 2010). Acting with an intent to cause harm is also no accident. Indeed, the Verlin Defendants do not deny that they are alleged to have acted with an intent to harm the Hamers: They only deny that they intended to damage the Easement. In sum, the allegations in the Underlying Litigation do not describe an "occurrence" for which a duty to defend or indemnify attaches. *See also Carvey v. Aetna Cas. & Sur. Co.*, No. CV970481512, 2001 WL 576660, at *6–*8 (Conn. Super. Ct. May 7, 2001) (discussing a policy with a similar definition of "occurrence"); *Allstate v. Smudin*, No. 3:07cv01679, 2009 WL 890912, at *4–*5 (D. Conn. Mar. 31, 2009) (same).

Because the Court concludes that there was no coverage under the policy, it need not take up the alternative argument that the intentional or criminal acts exclusion is applicable. In short, the claims advanced in the Underlying Litigation are not covered by the Verlin Policy. Allstate's Motion for Summary Judgment with regard to the Verlin Defendants is therefore GRANTED.

### The Byrne Defendants

Allstate advances many of the same arguments as to the Byrne Defendants as it did with

respect to the Verlin Defendants, and the Court finds them similarly persuasive insofar as the Byrne Defendants are similarly alleged to have acted intentionally, and neither do the Hamers seek recompense for "property damage" in the Underlying Litigation against the Byrne Defendants. But unlike the Verlin Defendants, the Byrne Defendants do not argue that Allstate has a duty to defend them based on the provisions of the Byrne Policy. Instead, the Byrne Defendants argue, with little citation to authority, that Allstate should be equitably estopped from withdrawing their defense. They believe it would simply be inequitable to allow Allstate to stop providing a defense in the Underlying Litigation because they have come to rely on that defense.[12] But this viewpoint, although sincerely held, does not adequately support an argument for equitable estoppel.

"There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." *Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 60 (2005) (quotations and alterations omitted). As Allstate asserts in its Reply Brief, Allstate has defended the Byrne Defendants in the Underlying Litigation pursuant to a reservation of rights, and it has long been the law that where an insurer clearly puts the insured on notice that the insurer is defending the insured pursuant to such a reservation, the insurer has no obligation to abandon a coverage dispute. *See Basta v. U.S. Fidelity & Guar. Co.*, 107 Conn. 446 (1928); *see also City of West Haven v. Hartford Ins. Co.*, 221 Conn. 149, 164–66 (1992) (explaining that if an insurer acts inconsistently with its reservation, then the insurer may waive that reservation and the

---

[12] Indeed, Marian Byrne states by affidavit that she is pleased with and appreciates the legal services she has received from counsel in the Underlying Litigation. The Court is unaware of any legal impediment to the Byrne Defendants entering into a retainer agreement with the same counsel so as to secure continuity of services.

right to dispute the policy's coverage). Allstate's defense pursuant to a full and complete reservation of rights—supported in the record by Exhibits 2, 3, and 4 to the Ladner Affidavit (ECF No. 73-1), admitted as a matter of fact by the Byrne Defendants' D. Conn. L. Civ. R. 56(a)2 Statement, and admitted directly by Marian Byrne in her affidavit in support of the Byrne Defendants' opposition to summary judgment—precludes any finding that Allstate's defense of the Byrne Defendants in the Underlying Litigation was intended to induce the Byrne Defendants to believe that Allstate's provided defense would continue without regard to any dispute between Allstate and the Byrne Defendants. And indeed, the Byrne Defendants have offered no argument or evidence that Allstate has in any way acted inconsistently with its reservation.[13] Accordingly, promissory estoppel affords no basis upon which to deny the motion for summary judgment.

In its Reply Brief, Allstate asserts that all other arguments regarding the motion for summary judgment have been abandoned by the Byrne Defendants. On this issue, the Second Circuit has observed that:

> "[p]leadings often are designed to include all possible claims or defenses, and parties are always free to abandon some of them." And insofar as summary judgment "is known as a highly useful method of narrowing the issues for trial," it follows that "preparation of a response to a motion for summary judgment is a particularly appropriate time for a non-movant party to decide whether to pursue or abandon some claims or defenses." Accordingly, "[g]enerally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others," and "a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." If a district court so holds, it "should . . . include a finding of abandonment of undefended claims or defenses."

---

[13] As Allstate also points out in its Reply Brief, the two cases concerning equitable estoppel cited by the Byrne Defendants are inapposite. Neither addresses equitable estoppel in the insurance context or otherwise persuades the Court that Allstate should be equitably estopped from discontinuing its defense of the Byrne Defendants.

*Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (quoting *Jackson v. Federal Express*, 766 F.3d 189, 197–98 (2d Cir. 2014)) (alterations in *Kovaco*) (internal footnotes and citations omitted). *See also Leavitt v. Ethicon, Inc.*, 524 F. Supp. 3d 360, 367 (D. Vt. 2021) (same); *Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03 Civ. 6614 (WHP), 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28, 2006) (finding claim abandoned by virtue of plaintiff's failure to address it in opposition to defendant's summary judgment); *DeVito v. Barrant*, No. 03-CV-1927 DLI RLM, 2005 WL 2033722, at *10 (same); *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Arias v. Nasdaq/Amex Mkt. Group*, No. 00 Civ. 9827 (MBM), 2003 WL 354978, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing claims as "abandoned" where plaintiff's summary judgment opposition "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment on two of his claims).

Because the Byrne Defendants, who are represented by counsel before this Court, have not contested Allstate's arguments regarding whether the policy imposes a duty to defend or indemnify the Byrne Defendants, the Court deems abandoned any such arguments.[14] In sum, Allstate has met its burden to show that it has no duty to defend the Underlying Litigation as to the Byrne Defendants. Allstate's Motion for Summary Judgment with regard to the Byrne Defendants is therefore GRANTED.

**Conclusion**

---

[14] And even if not deemed abandoned, the Court agrees with Allstate that the allegations against Marian Byrne and the other Byrne Defendants contained in Counts One, Two, Three, Four, and Six of the Underlying Complaint do not allege that the Hamers suffered any "property damage" as that term is used in the Byrne Policy. Likewise, for reasons discussed with respect to the Verlin Policy, none of the counts in the Underlying Litigation against the Byrne Defendants describe an "occurrence" as that term is used in the Byrne Policy.

Allstate's Motion for Summary Judgment is GRANTED in all respects. Allstate has neither a duty to defend nor a duty to indemnify the Verlin Defendants nor the Byrne Defendants in the Underlying Litigation. The Clerk of the Court is directed to enter judgment in favor of the Plaintiff and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of April 2022.

_/s/ Kari A. Dooley_
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE